UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SIMONE HAMPTON o/b/o J.G.P.,

          Plaintiff,

   -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

          Defendant.

                                    **DECISION and ORDER**
                                    **No. 12-CV-0873(MAT)**

_____

## I.   Introduction

Represented by counsel, Simone Hampton ("Plaintiff"), brings this action on behalf of her minor child ("J.G.P.") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

Plaintiff filed an application for SSI on behalf of J.G.P., a child under the age of 18, on May 8, 2008, alleging disability commencing May 1, 2008. T. 32, 140-42.[2] The initial application was

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

[2] References to "T.___" refer to the pages of the administrative transcript, submitted as a separately bound exhibit in this action.

denied, and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff and J.G.P. appeared with counsel at a video hearing before ALJ Jennifer Whang on September 7, 2010. T. 10-31.

On October 21, 2010, ALJ Whang issued a written decision determining that J.G.P. was not disabled and therefore not eligible for SSI. T. 36-50. The ALJ's determination became the final decision of the Commissioner on July 19, 2012, when the Appeals Council denied Plaintiff's request for review. T. 1-3. This action followed. Dkt. #1.

Now pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##9, 13. For the reasons that follow, the Commissioner's motion is granted, and Plaintiff's motion is denied.

## III. Factual Background

### A.    Testimonial Evidence

J.G.P. was 14 years-old at the time of the disability hearing, was in the seventh grade, and played football. T. 15. Plaintiff testified that J.G.P. had problems at school with his attitude, that he would nap during classes, and had confrontations with other students, as well as with his teachers. T. 16-17. She stated that she believed his diagnosis of sleep apnea probably caused his

irritability. T. 17. J.G.P. had recently been suspended for bringing a pocket knife to school. T. 24.

Plaintiff also testified that J.G.P. needed extra help on tests, and had been held back twice in school. T. 18-19. Although he had friends, he often had conflicts with them, as well as with his three siblings. T. 21-22. J.G.P. was not on any medication. T. 22.

**B.   School Records**

On September 2, 2008, J.G.P.'s special education and fifth grade teachers completed a questionnaire indicating that he was below level in reading, math, and writing. T. 170-76. He was in 11:1 classes for reading and writing, and in the domain of Attending and Completing tasks, "serious problems" were indicated in eight of thirteen categories, and "very serious problems" in organizing own things or school materials and in completing class/homework assignments. T. 172. In the domain of Interacting and Relating with Others, his teachers opined that he had serious problems in expressing anger appropriately; following rules; respecting/obeying adults in authority; and relating experiences and telling stories. T. 173. The teachers noted that J.G.P. was capable of more than his progress indicated. T. 171.

An Individualized Education Plan ("IEP") for the 2008-09 school year classified J.G.P. as Learning Disabled, requiring special education for reading, writing, and speech. T. 295-98.

Subsequent IEPs for 2009-2010 and 2010-2011 classified J.G.P. as special education with emotional disability. T. 216, 253.

In early 2010, J.G.P.'s math teacher noted that he had trouble focusing and fell asleep in class, but found minimal limitations in the childhood domains. T. 188-93. Around the same time, his physical education teacher found no problems or slight problems in all of the domains. T. 195-201.

On January 26, 2010, a Teacher Questionnaire completed by special education teacher Mary Fleming noted multiple serious problems in the domain of Attending and Completing Tasks, such as paying attention, focusing, refocusing, carrying-out single and multi-step instructions, and completing assignments. T. 208. Ms. Fleming also found serious problems in five of thirteen categories in the Interacting and Relating with Others domain. T. 209.

### C.   Medical Records

A Consultative Child Intelligence Evaluation conducted by Thomas Ryan, Ph.D. on September 15, 2008, when J.G.P. was 12 years-old, showed that he was below average age expectations in speech and language. T. 316. On the Wide Range Achievement Test, 3rd Edition, he scored at the second grade level. Id. The consultative examiner opined that the discrepancy between verbal and other skills suggested learning disability, and diagnosed J.G.P. with Learning Disorder, NOS.

-4-

Samuel Balderman, M.D., consultatively examined J.G.P. on September 15, 2008, and diagnosed him with obesity, learning disabilities, and recurrent ear infections. Other than avoidance of swimming, Dr. Balderman indicated no other limitations. T. 319-322.

A consultative Speech and Language Evaluation by Amy Atwater, M.S., also conducted on September 15, 2008, revealed moderate receptive language delay and mild expressive language delay. T. 326. Ms. Atwater opined that these impairments may adversely effect J.G.P.'s academic performance and ability to follow directions and instructions. T. 326. J.G.P.'s assessment was "good, with continued appropriate intervention." Id.

State Agency pediatrician J. Meyer reviewed J.G.P.'s records on December 16, 2008 and assessed less than marked limitations or no limitations in all domains. T. 340-41.

J.G.P. was seen by Nurse Practitioner Lisa Lynch on September 2, 2010. T. 351-52. Upon examination, J.G.P. demonstrated normal eye contact and speech, with coherent and goal directed thought processes, and poor insight and judgment. He fell asleep during the assessment. J.G.P.'s diagnoses were Oppositional Defiant Disorder ("ODD") rule out Mood Disorder NOS; Attention Deficit Hyperactivity Disorder; and sleep apnea. T. 351.

## IV.   The ALJ's Decision

### A.   Child Disability Standard

The statutory standard for children seeking SSI benefits based on disability is

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. §§ 416.924. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" or combination of impairments. Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

In applying the tree-step process, the ALJ found that J.G.P. had not engaged in substantial gainful activity during the period

under adjudication; J.G.P.'s learning disorder and sleep apnea were severe impairments; those impairments did not meet or medically equal the Listings, and his impairments were not functionally equivalent to any listed impairments. The ALJ then determined that J.G.P. was not disabled under the Act. T. 39-50.

## V.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine

the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## VI. Discussion

### A. Step 3 Assessment

Plaintiff first contends that the ALJ's determination that J.G.P.'s impairments did not functionally equal the Listings was

not supported by substantial evidence. Pl. Mem. (Dkt. #9-1) 8-12. Specifically, she asserts that J.G.P. had marked limitations in the domains of Interacting and Relating to Others and Attending and Completing Tasks. Id. at 11-12.

The Commissioner's regulations provide that an impairment is "marked" when the impairment interferes seriously with the ability to independently initiate, sustain, or complete activities; and when the impairment seriously limits day-to-day functioning. 20 C.F.R. 416.926a(e)(2). The record does not support Plaintiff's assertion of marked limitations in any of the domains.

Here, ALJ found a less than marked limitation in the domain of Interacting and Relating to others. In making this finding, she discussed the teacher reports, Plaintiff's hearing testimony, and school records, all of which "suggest[ed] moderate to significant problems in this area of functioning." T. 47. The ALJ went on to state, however, that J.G.P. had recently begun receiving counseling for anger management and coping skills, and was not on any medication for his impairment. Id. Her finding of a less than marked limitation was supported by J.G.P.'s testimony, which indicated that he friends in school and in the neighborhood, and that he played football. T. 26, 41. It was also supported by the opinion of State Agency pediatrician J. Meyer, who noted that J.G.P. had difficulty with social skills in regards to authority, and otherwise had a less than marked limitation. T. 43. The ALJ

reasoned that Meyer's report was consistent with the totality of the evidence in the record, and concluded that the severity of difficulties evidenced in J.G.P.'s school records and evaluation reports did not give rise to the level of a marked limitation in any of the domains. This evidence was properly evaluated by the ALJ and did not demonstrate an impairment that seriously limited J.G.P.'s day-to-day functioning, particularly in light of his lack of medication and newly-commenced therapies.

Accordingly, the ALJ relied on substantial evidence in the record to find no marked limitation in this domain.

Plaintiff also challenges the ALJ's finding in the domain of Attending and Completing Tasks. Pl. Mem. 10-11. ALJ Whang considered the various teacher reports in the record, and acknowledged that those reports generally indicated that J.G.P. had problems focusing on and completing tasks. T. 46, 172, 189, 208. She noted, however, that the record as a whole showed that his problems completing tasks stemmed largely from his sleeping difficulties, as evidenced by Plaintiff's testimony, numerous reports discussing his tendency to fall asleep during class, and multiple instances where he fell asleep during medical and psychological evaluations. T. 189, 324, 351. Ms. Atwater noted that "[o]nce [J.G.P.] was awake and began testing, he put forth good effort, and attention and concentration appeared to be appropriate for the tasks." T. 324. Further, the State Agency review physician

opined that J.G.P. had a less than marked limitation in this domain, and observed that J.G.P. had not been treated for, nor diagnosed with ADHD. T. 340. Plaintiff points to no evidence upon which a finding of a marked limitation in this domain could be based. As such, substantial evidence in the record supports the ALJ's determination in this regard with regard to the Listings.

**B.    Plaintiff's Credibility**

Plaintiff next contends that the ALJ "appeared to find Plaintiff's [ ] testimony to be less than fully credible. Such finding would not be supported by the evidence." Pl. Mem. 12-13.

Although the ALJ is free to accept or reject testimony of a claimant's parent, <u>Williams v. Bowen</u>, 859 F.2d 255, 260 (2d Cir. 1988), a finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record. <u>Id.</u> (citing <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)).

ALJ Whang recited Plaintiff's testimony at length, and pointed out that her testimony was consistent with other evidence in the record on multiple issues, including J.G.P.'s propensity to fall asleep during class, his  functioning in the domains of Interacting and Relating with Others and Health and Physical Well-Being, and his behavioral issues at school. T. 40-41, 42, 43, 47. Indeed, the ALJ relied heavily upon Plaintiff's testimony throughout the

written decision, demonstrating to the Court that she did not reject Plaintiff's testimony as incredible.

Although the ALJ did not expressly state the weight she did or did not give to Plaintiff's testimony (e.g. "little weight" or "great weight"), she did discuss the testimony in such a way as to make it clear to a reviewer of the decision that she credited Plaintiff's testimony. When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." Mongeur, 722 F.2d at 1040 (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).

Thus, even assuming the ALJ considered Plaintiff's testimony to have great weight, this consideration would not impact the ultimate outcome of the finding of no disability because there was no clinical evidence in the record to support a finding of disability. For example, J.G.P.'s diagnosis of ODD was based on a one-time evaluation by a Nurse Practitioner, and was not confirmed by any other mental health professional who evaluated him. T. 42. It is well-settled that statements alone cannot be conclusive evidence of disability; instead, "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a

medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b).

For all of these reasons, any potential error in failing to assign a specific weight to Plaintiff's testimony is harmless. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration.") (internal quotation omitted).

The ALJ's credibility determination as to Plaintiff's testimony is supported by substantial evidence and does not warrant remand.

## VII. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #13) is granted. The Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

Honorable Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 15, 2015
           Rochester, New York

-13-